# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN SCOTT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No.  CV408-261 |
| | ) | CR405-331 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

John Scott moves over the government's opposition for 28 U.S.C. § 2255 relief.  (Doc. 1.)[1]  For the following reasons, his motion should be **DENIED**.

## I.  BACKGROUND

Scott was sentenced to 120 months' imprisonment after pleading guilty to one count of bank fraud.  (Cr. doc. 231.)  The charge stemmed from a complicated scheme to defraud payroll management companies. Scott, the plan's mastermind, used his co-defendants as pawns to carry out his schemes.

---

[1] "Doc." citations are to the docket in movant's civil case, CV408-261.  "Cr. doc." refers to documents filed under movant's criminal case, CR405-331.

In the beginning, Scott was approached by several people who purportedly hoped to start a construction company. They asked Scott to offer his services as a general management consultant and to help them obtain startup capital to build their business. Rather than legitimately obtaining startup capital, however, they turned to fraud. Scott instructed them to create a business, Superior Ventures, LLC, and to list themselves as officers or employees. (Cr. doc. 282 at 38 (Rule 11 hr'g tr.).) Scott maintained his distance from the business, working only as a "consultant" rather than directly involving himself in the company. He then had the would-be entrepreneurs approach staffing firms to contract for payroll services. One of the firms they defrauded, Snelling Personnel Services, had its offices in Savannah, Georgia. (*Id.*) They reported to Snelling that they had a large construction contract in the city, but no such contract existed. (*Id.*) Snelling issued several payroll checks (to the future codefendants but never to Scott), but its invoices were never paid. (*Id.*) Nor did all of the money go to the "employees." The parties to the crime cashed their checks at a bank branch in Atlanta, Georgia, where they split the money according to Scott's wishes. (*Id.* at 39-41.)

Scott was charged with, *inter alia*, conspiracy, bank fraud, and money laundering. (Cr. doc. 176.) He admitted his complicity in the scheme when he entered a plea of guilty to one count of bank fraud. (Cr. doc. 222.) Since Scott was both the plan's mastermind and defrauded other banks in Virginia while he was on pre-trial release, he received the stiffest sentence. After considering the sentencing factors listed in 18 U.S.C. § 3553(a), the district judge applied an upward variance from the recommended guidelines range and sentenced Scott to 120 months' imprisonment. (*Id.*; cr. doc. 243 at 70.) After unsuccessfully appealing his sentence, *United States v. Scott*, 280 F. App'x 926 (11th Cir. 2008), Scott filed the present § 2255 motion contending:

(1) defense counsel was ineffective by lying and using unprofessional practices to persuade him to plead guilty;

(2) defense counsel was ineffective for lying on the record and protecting himself instead of maintaining absolute loyalty to his client;

(3) the sentencing judge improperly applied the sentencing guidelines;

(4) defense counsel was ineffective since he labored under an "obvious actual conflict" with movant; and

(5)    the Court violated his rights by refusing to grant his motion to withdraw his guilty plea.

(Doc. 1 at 4-9.)

## II.    <u>ANALYSIS</u>

At the outset, Grounds 3 and 5 were not raised on direct appeal and are therefore procedurally defaulted.[2]  *Lynn v. United States*, 365 F.3d

---

[2] Moreover, Scott's Ground 3 claim, that the probation officer miscalculated the loss amount for which he should be held accountable, is non-cognizable.  Such "nonconstitutional sentencing errors that have not been raised on direct appeal have been waived and . . . may not be reviewed by way of 28 U.S.C. § 2255."  *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994); *Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004) (a nonconstitutional error cannot be raised under § 2255 unless it: (1) could not have been raised on direct appeal, *and* (2) resulted in a complete miscarriage of justice; *Montemoino v. United States*, 68 F.3d 419, 417 (11th Cir. 1995).  Too, his assertion that his appellate counsel "failed to address" the claim is unavailing.  (Doc. 1 at 7.)   Scott never contends that his counsel was constitutionally ineffective in that regard.   And even if he did, it is appellate counsel's job to winnow out weaker arguments in favor of raising only "the most promising issues for review."  *Jones v. Barnes*, 436 U.S. 745, 751-52 (1983).

Scott also re-raises several issues in his discussion of Ground 3 that *were* raised on appeal but were decided adversely to him.  *See Scott*, 280 F. App'x at 927.  He suggests that the extraordinary upward variance in this case was unreasonable, that the sentencing judge should not have considered loss amounts calculated in the PSI beyond those admitted in the plea agreement, and that the judge failed to properly consider certain factors prior to applying an 18 U.S.C. § 3553(a) sentencing variance.  (Doc. 2 at 18-25.)   Those claims are dead in the water.   Absent extraordinary circumstances, which are not present in this case, Scott cannot relitigate those claims here, since they were raised and rejected on direct appeal.  *Davis v. United States*, 417 U.S. 333, 342 (1974); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Marshek v. United States*, 2006 WL 2036996, at *7 (S.D. Ga. July 18, 2006).

Moreover, even if the Court were to address Scott's primary gripe -- that the sentencing judge should not have considered non-admitted evidence in determining

1225, 1234 (11th Cir. 2004); *see United States v. Frady*, 456 U.S. 152, 167 (1982). Consequently, they are barred from collateral review unless Scott can establish either cause for not raising the claims on direct appeal and actual prejudice from the alleged error or a fundamental miscarriage of justice. *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Scott has not alleged cause and prejudice or a fundamental miscarriage of justice excusing the default, so those claims fail.[3]

Scott's remaining claims involve allegations of ineffective trial counsel. The test for ineffective assistance varies a bit depending upon whether a movant is addressing pre- or post-plea errors. Consequently,

---

his sentence -- he would lose on the merits. A district judge may, consistent with the Constitution, "use extra-verdict enhancements [proved by a preponderance of the evidence] . . . to increase a defendant's base offense level" under the Sentencing Guidelines. *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005); *id.* at 1300-1306 (noting that such fact-finding by the district judge at sentencing did not contravene the principles established in *United States v. Booker*, 543 U.S. 220 (2005)); *see United States v. Castellanos*, 904 F.2d 1490, 1495 (11th Cir. 1990) (a district court may even rely upon hearsay to enhance a defendant's sentence).

[3] Scott admits that he failed to raise Ground 5 on appeal because he "felt that he could raise this issue in his Habeas Petition." (Doc. 1 at 10.) As noted above, he was mistaken.

the Court will first address counsel's alleged pre-plea ineffectiveness, then step through the remaining claims.

## A. Pre-Plea Ineffectiveness Claims

In Ground 1 of his § 2255 motion, Scott claims that his trial counsel, Ted Johnson, was ineffective because he admitted to ineffectiveness and "he used fabrications to persuade [Scott] to plead guilty." (Doc. 1 at 4.) As to the "fabrications," Scott alleges that Johnson promised him that "if he ple[d] guilty[,] his fiancée would receive some lenience and that he would also receive a [U.S.S.G. §] 5K1.1 sentencing reduction" for offering trial testimony against codefendant Niblack.[4] (*Id.*)

It is a fundamental precept of criminal law that a defendant who enters an unconditional plea of guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (emphasis added). That is, "[a] defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent

---

[4] The government contends that this ground is procedurally defaulted since it was not raised on direct appeal. (Doc. 9 at 13-16.) It is mistaken. Claims of ineffective assistance of counsel are not subject to the procedural default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

counsel, waives all non-jurisdictional defects in that defendant's court proceedings." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (citing *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984)); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003); *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam). The bar applies both on appeal and on collateral attack. *See United States v. Broce*, 488 U.S. 563, 569 (1989). Accordingly, Scott may only attack the plea itself by showing that the advice he received from his counsel undermined "the voluntary and intelligent character of the plea." *Tollett*, 411 U.S. at 267; *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In determining whether counsel's advice undermined the plea, the Court relies upon *Hill*, which advanced a slightly modified version of the ineffective assistance of counsel test first announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Those who plead guilty then later raise an attorney ineffectiveness claim must first demonstrate that their attorney's performance was deficient by showing that counsel's advice regarding the plea was outside the "range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (quoting *McMann v.*

*Richardson*, 397 U.S. 759, 771 (1970)); *see Tollett*, 411 U.S. at 267. Movants must also demonstrate that the defective performance prejudiced the plea process to such a degree that the plea cannot be trusted. *Hill*, 474 U.S. at 59.

As noted above, Scott alleges that his attorney both admitted to ineffectiveness and lied to him to convince him to plead guilty. (Doc. 1 at 4; doc. 2 at 10.) This is not the first time that the Court has considered Scott's allegations, so some background is warranted. Two months after entering his guilty plea,[5] Scott prompted his attorney to file a motion to withdraw that plea. (Cr. doc. 200.) Scott alleged, through his attorney, that "[p]rior to the entry of his plea, [he] negotiated through his counsel and the Assistant United State's [sic] Attorney that as a condition of his plea co-defendant Krystll Gardner's case would be dismissed." (*Id.* at 1.) Next, he stated that he "was promised, by the Assistant United State's [sic] attorney that he would receive a 5K1.1 downward departure in exchange for his testimony against co-defendant Niblack." (*Id.*)

---

[5] Resolution of this matter requires consideration of the motion to withdraw Scott's guilty plea, which, of course, was filed *after* he entered his plea. The motion to withdraw highlighted Scott's dramatic "break" with his attorney, and since the break occurred *after* his plea, it is largely, but not totally, irrelevant to the question whether counsel's *pre-plea* advice was deficient or prejudiced Scott.

Moreover, Scott stated that "on several occasions [he] expressed his concern with receiving effective assistance of counsel . . . [specifically,] counsel's failure to timely file relevant motions i.e. Demurrer to the indictment or file a particularized motion to sever his case from the codefendants is evidence of counsel's incompetence." (*Id.*) That incompetence, said Scott, was prejudicial. (*Id.* at 1-2.) Finally, Scott "contend[ed] that his plea was based on an agreement with the Government and his hope of benefit," but "the Government failed to keep [its] agreement with him." (*Id.* at 2.)

The government vehemently denied Scott's allegations (cr. doc. 202), and the district judge denied the motion to withdraw after it found that the "record show[ed] no support for his plea-agreement-breach claim." (Cr. doc. 205.) Nevertheless, the motion caused quite a stir. Concerned about the representations made in the motion, the Court conducted an attorney inquiry hearing on April 5, 2007. (Cr. doc. 210.) During that hearing, at which both Johnson and Scott were present, it inquired from Johnson whether he was, in fact, affirmatively asserting his own ineffectiveness. (Cr. doc. 249 (inquiry hr'g tr.) at 4-5.) Johnson

responded "no, I have not rendered ineffective assistance of counsel to Mr. Scott. I've given Mr. Scott ever[y] minute that I could spare, every minute that he paid for in preparing his case for trial." (*Id.* at 5.) Instead, he explained that "[w]hat we attempted to assert in the petition was Mr. Scott's [belief], as communicated to me, that I did not do my job, and that I should have gotten certain things in writing, that I should have attacked the indictment, and that I should have filed a motion for severance." (*Id.*) Johnson, however, believed that such motions would have been frivolous and stated that he was not in the business of filing frivolous motions. (*Id.* at 5-6.)

Turning to the alleged plea promises, counsel admitted that he was both aware that the current AUSA assigned to the case had never made *any* promises regarding Ms. Gardner (though there had been *discussions* with an earlier AUSA) and that, in any event, Gardner actually entered a guilty plea *prior* to Scott's plea entry. (*Id.* at 9-10.) Similarly, Johnson acknowledged that defendant Niblack did not go to trial, so the government never needed any testimony from Scott and no § 5K1.1 departure would be warranted, even if such a promise were made. (*Id.* at

13.)   Johnson admitted, however, that he filed the motion based upon Mr. Scott's beliefs, not his own, and that he did so to "protect" himself since Scott was unhappy with his services.   (*Id.*)   Scott never rebutted Johnson's assertions at the hearing.

In a Report and Recommendation ("R&R"), the Court stated that it was not persuaded that the government had offered to dismiss the charges against Gardner or that Scott had been promised a § 5K1.1 reduction.[6] (Cr. doc. 214 at 6-9.)   After finding that the motion to withdraw Scott's plea was premised upon "bogus" facts, the Court held that Johnson "ha[d] fallen beneath the standards expected of lawyers who practice before this Court," (*id.* at 9.), by acceding to his client's demands that he file a motion "asserting facts and legal conclusions that counsel knew were unfounded."   (*Id.* at 5.)   Johnson's "explanation for asserting his own ineffectiveness as a ground for withdrawal of the guilty plea [was] not acceptable" since an "attorney does not serve as a mere mouthpiece or alter ego for his client, obligated to urge any motion or argument that his client wishes him to file."   (*Id.* at 4-5.)   Johnson had failed to adhere to

---

[6] Nor was it persuaded that the government breached its alleged promise of *leniency* to Ms. Gardner, since her sentencing had not yet occurred.

the ethical standards of the profession, "which preclude an attorney from making a 'false statement of material fact or law' to a Court." (*Id.* at 4-5.) Accordingly, it was recommended that Johnson be suspended from practice in the Southern District of Georgia for a period of five years and that he take 100 ethics hours of continuing legal education. (*Id.* at 9-10.) The district judge adopted those findings and recommendations. (Cr. doc. 238.)

The record thus shows that Johnson filed a meritless motion to withdraw the plea at Scott's insistence. Yet Scott, who concocted the situation, now *brazenly* seeks to reassert those claims on collateral attack. First, referring to the motion to withdraw the plea, he contends that Johnson was ineffective because "he had once before filed ineffectiveness upon himself." (Doc. 2 at 11; doc. 10 at 7-8.) That, of course, is just plain laughable.[7] Johnson's post-plea, *manufactured* "admission" simply does not support a claim of pre-plea deficient performance.[8] Scott's next

---

[7] Any deficiencies on Johnson's part arose *after* the plea, when he forgot his responsibilities to this Court and filed a frivolous motion asserting lies conceived of by Scott in an attempt to undo his plea.

[8] An attorney's admission of ineffectiveness cannot be dispositive in any event. *Chandler v. United States*, 218 F.3d 1305, 1316 n. 16 (11th Cir. 2000); *Atkins v.*

assertion, that Johnson was ineffective for misleading him as to the plea, is similarly meritless.[9] While the government may have agreed in principle to make a motion for a § 5K1.1 sentencing reduction if Scott's testimony was necessary at trial, Niblack signed a plea agreement on February 5, 2007, which was accepted by the Court. *United States v. Niblack*, No. CR407-035, doc. 7 (S.D. Ga. Apr. 18, 2007). Accordingly, while Scott may have *offered* substantial assistance, he never actually *provided* it since the government never needed his testimony.[10] And even more importantly, Scott admitted when he entered his plea that the *only* promise he received was that the government would dismiss all but count 6 of the indictment if he accepted the agreement. (Cr. doc. 282 at 32.)

---

*Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (ineffectiveness is a question for the courts to decide; "admissions of deficient performance by attorneys are not decisive").

[9] Since Scott knew that his fiancée had entered a plea prior to the entry of his own plea (cr. doc. 249 at 9-10), he has tweaked his present assertion to better fit those facts. That is, if he presently alleged that the government promised to *dismiss* the charges against her, his claim would border upon perjury. Scott, clearly anticipating that issue, now contends in a more general manner that he was promised *leniency* for Gardner rather than dismissal. (Doc. 2 at 10-12.)

[10] A U.S.S.G. § 5K1.1 sentencing reduction may only be awarded "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." The rule clearly presupposes that a defendant has actually assisted the government. Scott offers no reason to believe that he provided any assistance to the government in its prosecution of Niblack, much less *substantial* assistance.

13

Scott swore under oath that no one, *including his attorney*, the government, or any co-defendant, had made him any promises not contained in that agreement, and neither of the alleged "promises" were included in Scott's plea agreement.[11] (Cr. doc. 223; cr. doc. 282 at 31-32, 37.) Scott's solemn declarations before the district judge carry a strong presumption of verity and rightly constitute a formidable barrier for him to overcome in these collateral proceedings. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Cross v. United States*, 2009 WL 211418 at * 8 (S.D. Ga. Jan. 27, 2009). Scott falls far, far short of overcoming that barrier.

Defendants "cannot be permitted to manufacture a winning [ineffectiveness] claim by sabotaging [their] own defense, or else every defendant clever enough to thwart [his] own attorney[] would be able to overturn [his] sentence on appeal." *Owens v. Guida*, 549 F.3d 399, 412 (6th Cir. 2008). Since Scott's contrived claim finds no support in the

---

[11] At the attorney inquiry hearing, Johnson stated that it was Scott's "understanding that [the government] would consider some leniency toward Ms. Gardner in exchange for Mr. Scott's plea" (cr. doc. 249 at 10), yet neither Scott nor Johnson made such an assertion on the record when he entered his plea or inserted any such provision into the plea agreement. Moreover, since Gardner was not sentenced until April 17, 2007, several months *after* Scott's motion to withdraw his plea, his allegation that the government breached its agreement to offer her leniency, presumably at sentencing, is nonsensical. *United States v. Gardner*, No. CR406-361, doc. 12 (S.D. Ga. Apr. 17, 2007).

record, he has not shown that his attorney provided deficient performance prior to the entry of the plea.[12]  This claim is meritless.[13]

## B.  Post-Plea Ineffectiveness

Scott raises several allegations of post-plea ineffectiveness.  (Doc. 1 at 5; doc. 2 at 14-18.)  In Ground 2, he again states that Johnson lied to him prior to the entry of the plea and to the Court in the motion to

---

[12] Indeed, Scott even now admits that at his bond revocation hearing, "Counsel rigorously defended the movant. . . ."  (Doc. 2 at 17; cr. doc. 255 at 6-7.)  Similarly, at the entry of his plea, counsel vigorously defended Scott, arguing that though he violated the terms of his bond when he left the jurisdiction to travel to Virginia, he simply did so to obtain a legitimate line of credit to save his house and provide for his child.  (Cr. doc. 282 at 43-44.)

[13] Briefly turning to another matter, Scott also contends that Johnson failed to inform him of each of the government's plea offers.  (Doc. 2 at 28.)  While it is not raised as a claim of pre-plea ineffective assistance, the Court will err on the side of caution and address it as such.

Scott refers the Court to the attorney inquiry hearing, where Johnson stated, "I *believe* the government had offered Mr. Scott at least on four different occasions opportunity of which to enter[] a plea[,] [a]nd on each and every occasion, we discussed all of the relevant facts and circumstances regarding his defenses, regarding motions, et cetera, et cetera."  (Cr. doc. 249 at 5 (emphasis added).)  Scott perfunctorily contends "that he was never advised about the four different occasions as counsel has stated, and this is another one of counsel's misrepresentations."  Scott, however, never objected to his attorney's statement at the time it was made during the April 5, 2007 evidentiary hearing.  Nor has he brought forward any evidence supporting his assertion or suggested that his decision to accept the plea offer would have been altered in any respect if counsel had advised him earlier of the government's willingness to enter plea negotiations.  The claim is also meritless.

withdraw that plea (doc. 2 at 14-16), and he states that Johnson abandoned him by failing to attend his presentencing interview with probation (*id.* at 16-17), failing to discuss the PSI with him (*id.*), failing to communicate with him after the attorney inquiry hearing (*id.* at 16), admitting that he "got caught" in Virginia perpetuating another scam (*id.* at 17), and stating on the record that he could not represent him in good faith at the sentencing hearing (*id.* at 18).[14] In Ground 4, Scott states that Johnson performed deficiently by failing to file a written response to the government's motion for an upward variance (or inform him of the motion), and failing to call witnesses (including Scott) or submit other mitigating evidence at sentencing.[15] (*Id.* at 26.)

In addressing such claims, the Court is guided by *Strickland*, which

---

[14] In his brief, Scott also states that he requested appointed counsel at the attorney inquiry. (Doc. 2 at 16.) He misrepresents the record. He discussed such appointment with the Court, but he never filed an affidavit of indigency or fired Johnson, although the Court afforded him that opportunity. (Cr. doc. 249 at 25-28.) Indeed, Scott did not officially attempt to fire Johnson until just before the sentencing hearing. (Cr. doc. 243 at 3.)

[15] In Ground 4, Scott asserts that those facts show that Johnson labored under a conflict of interest. (Doc. 2 at 26-30.) Out of an abundance of caution, the Court addresses the claims as if they were raised as general claims of attorney ineffectiveness. The Court has omitted, however, Scott's Ground 4 reassertion that Johnson lied to him to procure a plea, since that claim was addressed and rejected above.

created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)

(en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

Here, the Court need not reconsider Scott's first claim, that Johnson lied to him during plea negotiations, since it addressed the claim under the proper standard above and found it wanting. Scott's next contention, that Johnson was ineffective based upon his misrepresentations to the Court in the motion to withdraw the guilty plea, merits some discussion, however. (Doc. 2 at 14-15.) While Johnson no doubt violated his ethical duties by filing that motion, Scott has not pointed to any actual prejudice resulting from those misrepresentations to the Court but instead implies that the Court should presume it. His generalized allegations of

prejudice will not do. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (*citing Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United States v. Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations). Moreover, Scott never advanced, either in the motion to withdraw the plea or in his present § 2255 motion, any *valid* reason that would have permitted him to withdraw his plea. Thus, had Johnson performed "effectively," he simply would not have filed the motion at all and Scott would be in the exact same situation.[16]

Next, Scott complains that Johnson abandoned him. Specifically, he claims that Johnson: (1) did not attend his presentencing interview; (2) did not discuss the PSI with him or seek his assistance in framing objections; (3) did not communicate with him after the attorney inquiry

---

[16] Additionally, the misrepresentations were made at Scott's insistence. Scott sabotaged his own case and cannot now contend in good faith that counsel's succumbing to his request warrants withdrawal of the plea or re-sentencing. *See Owens*, 549 F.3d at 412.

hearing; and (4) admitted that Scott "got caught" in Virginia perpetuating another scam.[17]   (Doc. 4 at 26.)   The Court will also address his Ground 4 assertion that Johnson was ineffective for failing to present any mitigating evidence at sentencing.   (*Id.* at 28.)

First, as to Johnson's failure to attend the presentence interview, that, standing alone, does not show that Johnson performed deficiently. *See United States v. Benlien*, 63 F.3d 824, 827-828 (9th Cir. 1995) (rejecting the same argument since presentence interviews are "not a critical stage of the adversary proceedings" and noting that "every other

---

[17] In another Ground 4 averment, Scott points to Johnson's testimony regarding a motion to withdraw, raised at the beginning of the sentencing hearing. (Doc. 2 at 26.)   Johnson stated that Scott "engaged in a series of name calling, and acted very agitated toward me in a violent way.   Under these circumstances, Judge, the fact that I was retained and he has now fired me, Judge, I, in good [conscience], given his behavior, and his threats, and his conduct toward me, cannot represent him in good faith."   (Cr. doc. 243 at 3.)   The sentencing judge denied the motion to withdraw, stating that Johnson was either in "in complicity with [his] client," or that Scott was attempting to delay sentencing.   (*Id.*)   Thereafter, Johnson stated that he was "ready to proceed," and the sentencing progressed without further incident.

Again, Scott is to blame, not Johnson.   Scott could have fired Johnson after the attorney inquiry hearing.   Instead, he chose to dismiss Johnson on the day of sentencing.   The sentencing judge was under no constitutional obligation to grant a continuance so that Scott could obtain different counsel.   *Ungar v. Sarafite*, 376 U.S. 575, 590 (1964); *United States v. Terry*, 449 F.2d 727, 728-29 (5th Cir. 1971); *see also United States v. Kerris*, 748 F.2d 610, 615 (11th Cir. 1984) (it is well established that the "freedom to have counsel of one's own choosing may not be used for purposes of delay").   Since Scott again manufactured the incident, he cannot rely upon it to support his claim of ineffective assistance of counsel or his claim that counsel labored under a conflict of interest.

Circuit to have confronted the question" has reached the same result); *see United States v. Hooks*, 147 F. App'x 956, 959 (11th Cir. 2005) (*citing United States v. Simpson*, 904 F.2d 601, 611 (11th Cir. 1990) (declining to address the issue, but noting that three circuits have rejected it)). Next, Scott's claim that he did not discuss the PSI with Johnson and was not aware of Johnson's objections to the PSI is dubious at best, perjury at worst. Johnson was questioned about the objections at the attorney inquiry hearing, long before sentencing, while Scott was present. (Cr. doc. 249 at 24-25.) Turning to Johnson's cessation of communication, that *could* support the deficiency prong of the inquiry, but Scott has not shown that the breakdown prejudiced him in any way at sentencing.[18] Indeed, he has not made a particularized showing of prejudice as to any of these claims.[19]

---

[18] There is no indication in the record that there was a failure in communication. Scott never wrote the Court, as defendants are wont to do, concerning counsel's deficiencies.

[19] He has not shown that the PSI was more unfavorable than it should have been because of Johnson's failure to attend the presentence interview, or his alleged failure to maintain adequate communication. Nor has he alleged that he would have raised more or different objections to the PSI had he been made aware of the Johnson's objections.

Some background is in order as to Scott's fourth abandonment contention—that Johnson was ineffective since he admitted "at the Attorney Inquiry hearing . . . that movant had 'got caught in Virginia pretty much doing the same thing.'" (Doc. 2 at 17.) Scott, who was released on bond early in the proceedings (cr. doc. 32), left the District in violation of a Court order and traveled to Virginia, where he took out additional questionable loans using fraudulent information. (Cr. doc. 282 at 44-50.) Scott's sister and another friend also obtained lines of credit in Virginia using similarly falsified information. (*Id.* at 55.)

Admittedly, the district judge considered those transactions in determining Scott's sentence. (Cr. doc. 243 at 70-71.) At the sentencing hearing, the government offered evidence from Special Agent Koperno, who explained Scott's involvement in fraudulently obtaining the loans using both falsified earnings information and an address from which he had earlier been evicted. (*Id.* at 50-59.) Johnson's "admission" was made in an entirely different context and before a different judge.[20] Even

---

[20] Additionally, the transcript Scott now relies upon to prove his claim was not prepared until November 19, 2007 (cr. doc. 249 at 29), many months after Scott's April 17, 2007 sentencing. (Cr. doc. 231.)

if Johnson performed deficiently in making the statement during the attorney inquiry hearing, Scott offers no reason to believe that the statement had any impact on his sentence.

Additionally, Johnson's decision not to cross-examine Agent Koperno or to offer Scott's alleged exculpatory information appears to have been reasonable under the circumstances of the case.[21]   After all, Scott, along with two other people, drove to Virginia, in violation of a Court order, in order to take out lines of credit that they clearly could not afford to repay at that time.   (*Id.* at 53-55.)   Scott admits as much, acknowledging that he had no income and needed the money to save his house.[22]   (Doc. 2 at 17.)   Moreover, Scott was given every opportunity to rebut the sentencing evidence against him, but, of his own volition, chose not to do so:

> THE COURT:  Mr. Scott, will you come to the lectern? Mr. Scott, you are not required to make any statement, but

---

[21] Scott's insistence that he paid on the Virginia loans and has documentation does not aid the inquiry.   (Doc. 2 at 22.)   While repayment may have been a factor in sentencing, it does not carry with it the implication that Scott did not conspire to obtain the loans or obtain the loans by means of false representations.

[22] Had Johnson further antagonized the judge, his client may have paid an even higher price at sentencing, or he might have faced additional criminal charges from the government.

you have a[n] absolute right to make such [a] statement as you feel is appropriate. The choice is yours, whether you wish to speak on your behalf or to rely on counsel.

DEFENDANT: No, I don't have anything to say.

THE COURT: I [can] give you a few more minutes to think about it, if you want. If you have already decided, of course --

MR. JOHNSON: Judge, on the advice of counsel, Mr. Scott intends to appeal.

THE COURT: Yes.

MR. JOHNSON: I may be a witness in that situation, given our tumultuous relationship.[23] Second above that, Judge, he has an ongoing investigation in Virginia. I do not wish him to say anything that may be used against him in that investigation. So on the advice of counsel, I suggested to Mr. Scott not to say anything.

THE COURT: But this is a personal right, Mr. Scott. I understand, and I'm not trying to get you to go against counsel's instructions. But you have a right to speak. I will not place you under oath. You may speak or you may remain silent. The only thing I want you to do is, it is the choice that

---

[23] Johnson is clearly alluding to the possibility that Scott would raise claims of ineffective assistance of counsel against him on appeal. Scott did so, but the Eleventh Circuit declined to consider them at that time. *Scott*, 280 F. App'x at 930. Scott's assertion that this testimony supports a showing of some sort of conflict of interest is bogus. (Doc. 2 at 7.)

you have. Of course, all of this proceeding is recorded.

DEFENDANT: I'm going to remain silent.

THE COURT: I'm sorry.

DEFENDANT: I'm going to remain silent.

THE COURT: All right. . . .

(Cr. doc. 243 at 67-68.)[24]

Next, Scott alleges that Johnson was ineffective for failing to present any mitigating evidence or character witnesses at sentencing or explain to him that he could present character witnesses. As noted above, Scott himself declined to present any mitigating evidence on his own behalf at sentencing, and he has not brought forward any mitigation evidence or even stated who would have testified on his behalf or what they would have said. Accordingly, has not shown deficiency or prejudice.

Finally, Scott states that Johnson performed deficiently by failing to file a *written* response to the government's motion for an upward

---

[24] Earlier in the proceeding, the judge stated "[o]f course, I want to ensure that Mr. Scott understands that he may rebut any information in mitigation of the sentence, and he may make a statement that is not under oath." (Cr. doc. 243 at 66.)

departure under U.S.S.G. § 4A1.3 or variance under 18 U.S.C. § 3553(a), or to inform him of the existence of that motion.[25]  (Doc. 2 at 26.)  The first half of his claim is a non-starter.  Although Johnson did not file a written response to the motion, he vigorously opposed it on the record before the sentencing judge, arguing as follows:

> MR JOHNSON: Judge, in looking at the *United States v. Booker*, and also 3553, and you add the third part of that, the policy behind the sentencing guidelines, Mr. Scott falls squarely behind the intent, the policy, and the meaning of his criminal history and the level that he was assessed, Criminal History Category III.
>
> We have to give some consideration, Judge, that the people who devised the guidelines, even though we know they are advisory now, considered all of these factors.  And that is why we have a range, Judge, in the sentencing guidelines of 57 to 71 months.
>
> Mr. Scott's conduct, if you will, was no less important than anyone else's conduct in terms of stealing from these payroll companies.  So, with that in mind, Judge, we would ask the Court not to depart upward.  That is not, even though -- I mean, we have some complicated issues, and Mr.

---

[25] Section 4A1.3 permits a court to depart upward under the guidelines where a defendant's criminal history category under-represents the seriousness of his criminal history.  Scott contends that he received such a departure (doc. 2 at 22), but it is clear from the record that the sentencing judge employed an 18 U.S.C. § 3553(a) variance instead.

Scott possibly secreted himself from detection, this is not the case of the century where we're dealing with a million bucks, not to minimize that $200,000 is a lot of money. But this is not a situation, Judge, where we have severe identity fraud where a number of people, individual citizens were affected. We're dealing with companies that were ensured. We're dealing with a mechanism set into the guidelines to repay those victims, and also, to mete out the punishment necessary for this type of offense.

Not to suggest, Judge, that when you look at 57-71 months, you're talking about six years, five years or better. And then after that five years of supervised release, if the Court deems that appropriate. We're talking about ten years of supervision under the guidelines as written.

So ten years is a significant amount of time, Judge, to monitor Mr. Scott, to keep him right within the system. And again, Judge, this is much like *Booker*, this is a run-of-the-mill type of fraud scam that does not warrant the Court going outside of the guidelines to go upward and treat the defendant as if he were a category V or VI.

So, Judge, we would ask that you sentence the defendant between 57 and 71 months.

(Cr. doc. 243 at 66-67.) After considering defendant's response, the Court determined that a variance, rather than a departure, was warranted and sentenced Scott to 120 months' imprisonment. (*Id.* at

70.)   As to the second part of his claim, that Johnson did not inform him of the motion, Scott has failed to show any prejudice from this alleged failure in communication.

## C.   Conflict of Interest

In Ground 4, Scott contends that his attorney labored under a conflict of interest.   (Doc. 1 at 8; doc. 2 at 25-30.)   "The Sixth Amendment right to effective assistance of counsel encompasses the right to counsel untainted by conflicts of interest."   *Lynd v. Terry*, 470 F.3d 1308, 1318 (11th Cir. 2006), *citing Cuyler v. Sullivan*, 446 U.S. 335 (1980). "This right is violated when the defendant's attorney has an actual conflict of interest that adversely affects the lawyer's performance." *Cuyler*, 446 U.S. at 350.   To prove ineffective assistance based upon a conflict of interest, movant must show:   "(a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance."   *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001), *citing Cuyler*, 466 U.S. at 348-49.

In order to establish an actual conflict, Scott "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987). "A possible, speculative or merely hypothetical conflict does not suffice." *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987), *citing Cuyler*, 446 U.S. at 350. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350.

Scott states that Johnson "was *mostly* concerned for himself," and that he turned his attention "from the client to his *possible* desire to curry favor with the government or Court pending his own situation." (Doc. 2 at 26-27 (emphasis added).) He offers a laundry-list of allegations supporting his belief that Johnson was more interested in protecting himself and looking good to the Court than representing his client to his fullest ability: Johnson lied to him and the Court regarding plea

negotiations, discontinued communications with him after the attorney inquiry, advised him not to make any statements on his own behalf (presumably at sentencing), and suggested that he may be a witness against him in another matter. (*Id.* at 26.) Additionally, he states that Johnson did not bring him each of the government's proposed plea offers, did not present any mitigating evidence or character witnesses on his behalf at sentencing, and did not respond in writing to the government's motion for an upward departure or advise his client that such a motion had been filed.[26] (*Id.* at 28-29.)

Scott's facts fail to show any *actual* conflict -- i.e., that Johnson was actively representing the government, himself, or another, rather than his client.[27] And his conclusory assertion that Johnson was conflicted due to

---

[26] Scott also alleges that counsel was ineffective on appeal for failing to file a "transcript information form" and failing to apply "for admission to the Eleventh Circuit Bar." (Doc. 2 at 30; doc. 10 at 5.) He asserts that counsel's failures on appeal were prejudicial. The Eleventh Circuit dismissed Johnson from the case and appointed substitute counsel. (Cr. doc. 248.) Thereafter, the appeal proceeded normally. Scott has not provided any showing that he was prejudiced by the substitution, other than his conclusory assertion. His self-serving conclusory claims do not warrant § 2255 relief. *See Caderno*, 256 F.3d at 1217.

[27] Scott points to the attorney inquiry hearing, where Johnson admitted that he sought to "protect" himself by filing the motion to withdraw the guilty plea. (Cr. doc. 249 at 7.) But that statement would have to be taken far out of context to show any sort of conflict, since Johnson went on to explain that he filed the motion at Scott's

his possible involvement as a witness in another matter is misleading. Johnson was referring to being called as a witness to possible ineffectiveness claims on appeal. *See supra*, n. 23. Nor has he shown any resulting prejudice from this alleged conflict. Consequently, this claim is without merit and is denied.

## III. <u>CONCLUSION</u>

For all of the reasons explained above, Scott's § 2255 motion (doc. 1) should be **DENIED**. Moreover, applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.

---

insistence. Far from representing Johnson's own interest, Johnson admitted that he was attempting to serve his client's wishes. And, as explained above, he was (in an ethics-breaching manner) pandering to Scott's manipulative wishes.

Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  4th  day of February, 2010.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT of GEORGIA**